**Stanton R. Gallegos, OSB #160091**
StantonGallegos@MarkowitzHerbold.com
**Jermaine F. Brown, OSB #073415**
JermaineBrown@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085

**Neal J. Deckant \***
ndeckant@bursor.com
BURSOR & FISHER, P.A.
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455

*Attorneys for Plaintiff and the Putative Class*
*Additional Counsel on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CHRISTOPHER KORDA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUGSUSA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.  3-23-cv-1026<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT ("UTPA"), ORS 646.608(1)(j);**<br><br>**(2) VIOLATION OF OREGON'S UTPA, ORS 646.608(1)(ee); AND**<br><br>**(3) UNJUST ENRICHMENT / RESTITUTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Korda ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant RugsUSA, LLC ("RugsUSA" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      The market for rugs and carpets is highly competitive, with many options for consumers to choose from.  Defendant seeks to carve out a larger share of this market by offering "perpetual sales" that never end and discounted prices through its e-commerce store, touting "thousands of world-inspired rug designs at prices that can't be beat."[1]

2.      It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions.  Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains.  Products perceived by consumers to be discounted, however, are not always actual bargains.  In an effort to give the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of the merchandise available on its website (the "Products") through its deceptive sales tactics.

3.      When consumers visit Defendant's online store, they are shown purported "sale" prices on nearly all of Defendant's Products, including new product lines:

---

[1] https://www.rugsusa.com/



4.      However, Defendant's products never sell at the purported strikethrough price.

5.      It is well established that false "reference pricing" violates state and federal law. Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their online purchases to induce them into making a purchase they otherwise would not have made.

6.      As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing

the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

7.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(j) and (ee), as well as fraud and unjust enrichment.  Through this action, Plaintiff seeks to enjoin Defendant from its false and deceptive sales practices and seeks to obtain damages, restitution, injunctive relief, and reasonable attorneys' costs and fees.

## **JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

9.      This Court has personal  jurisdiction over the parties because Plaintiff resides in Oregon and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted business in Oregon, including within this District, and/or intentionally availed itself of the benefits and privileges of the Oregon consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout Oregon.  Additionally, Plaintiff purchased the Products at issue from Defendant while in Oregon.

10.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein

occurred in this District.  Also, Plaintiff resides in this District and purchased Defendant's

Products in this District.  Moreover, Defendant systematically conducts business in this District

and throughout the State of Oregon, and it distributed, advertised, and sold the Products to

Plaintiff and Class Members in this State and District.  The Portland Division is the appropriate

venue because, as explained below, a substantial part of the events giving rise to the claims

occurred in this division.

## **PARTIES**

11.     Plaintiff, Christopher Korda, is an individual consumer who, at all times material

hereto, was a citizen and resident of Portland, Oregon.

12.     Mr. Korda purchased a "Chroma Tree of Paradise Medallion Rug" ("Plaintiff's

Purchased Product") from Defendant's e-commerce store in or around September 2022, which,

at the time, showed a strikethrough price of $309.40, with a purported "sale" price of $123.70 –

representing a 60 percent discount.[2]



---

[2] Screenshot from Plaintiff's order confirmation email.

13.    Before making his purchase, Mr. Korda reviewed information about the Product, including Defendant's representations that the Product he purchased was being offered at a discounted "sale" price, including but not limited to that the Product was normally sold at "$309.40" and that the original, non-sale price was higher than the advertised price. When purchasing his Product, Mr. Korda also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representation and warranties by Defendant that its Products were ordinarily offered at a higher price.

14.    Mr. Korda relied on Defendant's false, misleading, and deceptive representations and warranties about the Products in making his decision to purchase his Product. Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased his Product, or would not have paid as much for his Product, had he known Defendant's representations were not true. Defendant's representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

15.    Had Mr. Korda known the truth—that the representations he relied upon in making his purchase were false, misleading, and deceptive—he would not have purchased his Product or would have paid less for it. Mr. Korda did not receive the benefit of his bargain, because Defendant's Products are not of the represented quality and value. Mr. Korda understood that each purchase involved a direct transaction between himself and Defendant, because the Product he purchased came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

16.    Defendant RugsUSA, LLC, is a Delaware limited liability company with a principal place of business in Cranbury, New Jersey. Defendant manufactures, markets, and

advertises and distributes its Products throughout the United States, including Oregon.

Defendant manufactured, marketed, and sold the Products during the relevant Class Period. The

planning and execution of the advertising, marketing, labeling, packaging, testing, and/or

business operations concerning the Products were primarily or exclusively carried out by

Defendant.

## FACTUAL BACKGROUND

17. Defendant manufactures, markets, sells, and distributes its Products throughout

the United States, including Oregon, through its e-commerce store.

### A. State And Federal Pricing Guidelines

18. Federal and state courts have articulated the abuses that flow from false reference

pricing practices. For example, the United States Court of Appeals for the Ninth Circuit

explained: "Most consumers have, at some point, purchased merchandise that was marketed as

being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware

of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by

falsely claiming that their products have previously sold at a far higher 'original' price in order to

induce customers to purchase merchandise at a purportedly marked down 'sale' price." *Hinojos*

*v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

19. Oregon law prohibits false reference pricing practices such as those perpetrated

by Defendant. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits: "Mak[ing]

false or misleading representations of fact concerning the reasons for, existence of, or amounts of

price reductions." ORS 646.608(1)(j).

20. Oregon's UTPA explicitly prohibits reference price advertising which uses terms

such as "regular," "sale," "originally," and "clearance" where the reference price was not in fact

the retailer's own former price for the product.  ORS 646.608(ee); ORS 646.885(1).

21.     Oregon's UTPA also explicitly prohibits reference price advertising which uses terms such as "____ percent discount," "$____ discount," "____ percent off" and/or "$____ off" where the reference price was not in fact the retailer's own former price for the product.  ORS 646.608(ee); ORS 646.885(2).

22.     Defendant's advertised reference prices and discounts (including its percentage-off and strikethrough pricing) on its website violates Oregon law because Defendant's advertised reference prices are inflated and fictitious, and its advertised percentage-off and dollars-off discounts are false.

23.     The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics.  *See* 16 C.F.R. § 233.

24.     The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

25.     The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and**

in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based." 16 C.F.R. § 233.1(b) (emphasis added).

26.     The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

27.     Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

**B.      Defendant's Deceptive Sales Practices**

28.     Defendant primarily sells its Products through its e-commerce website.

29.     In an effort to increase sales, Defendant engages in a pervasive online marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a products quality or value is difficult to discern.[3]

---

[3] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

30.    Defendant deceives consumers through the utilization of a fictitious strikethrough reference price accompanied by a purported lower discounted price, and/or a "Discount Running Now" sale percentage:



4

31.    Such representations are uniform for all Products listed on Defendant's website.

32.    Upon information and belief, the strikethrough reference prices and "% Discount" prices listed by Defendant are purely fictitious prices and not based on comparable sales offerings in the market nor are they the former price at which such Products were originally available for.  Instead, this fictitious price is merely offered for the purpose of deceiving consumers into believing they are receiving a bargain for their purchases.

---

4 https://www.rugsusa.com/rugsusa/rugs/rugs-usa-tree-of-paradise-medallion/Orange/200KKCB22A-53077.html#fullModal

33.     In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

**C.      Plaintiff's Purchase History**

34.     On, September 18, 2022, Plaintiff Korda purchased a "Chroma Tree of Paradise Medallion Rug" ("Plaintiff's Purchased Product") from Defendant's e-commerce store, which, at the time, showed a strikethrough price of $309.40, with a purported "sale" price of $123.70 – a 60 percent discount.  A receipt of Plaintiff's transaction is provided below:



**Order Summary**                    View Order

5' 3" x 7' 7"
Chroma Tree Of
Paradise Medallion
Rug
~~$309.40~~ $123.70
Quantity: 1

| | |
|---|---|
| Subtotal | $123.70 |
| Shipping | (FREE) |
| Sales Tax | $0.00 |
| Grand Total | $123.70 |

35.     Defendant represented that this Product was marked down from an original price of $309.40 and that it was being sold to Plaintiff for $123.70, "60%" off the list price.

36.     However, none of these Products were ever sold at the strikethrough price advertised by Defendant.

37.     Moreover, such a comparison price does not reflect those prices charged by others for the same merchandise in Defendant's trade area.

38.     In reality, the strikethrough prices and "% discount" listed by Defendant are entirely fabricated to give off the appearance of a bargain.  Defendant intentionally misled Plaintiff, as well as other consumers, into believing that its Products are worth and ordinarily offered at a higher price.

39.     In fact, Plaintiff's Purchased Product is still advertised on Defendant's website at the "sale" price of $123.70, nearly one year after Plaintiff's purchase.[5]

40.     Plaintiff reasonably relied on Defendant's representations that its Products were worth and ordinarily offered at a higher price.  If Plaintiff had known the truth (*i.e.*, that the Products were not being offered at a "discounted" or "sale" price, but rather, at the price at which it is typically offered), he would not have purchased the Product.

41.     Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

42.     Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

43.     Defendant commits the same unfair and deceptive sales practices for all of its

---

[5] https://www.rugsusa.com/rugsusa/rugs/rugs-usa-tree-of-paradise-medallion/Orange/200KKCB22A-53077.html

Products.

44.     Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

## CLASS ACTION ALLEGATIONS

45.     **Class Definition**: Plaintiff brings this action individually and on behalf of a class of similarly situated individuals as a class action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.  The classes Plaintiff seeks to represent are defined as follows (collectively, the "Classes"):

(a)     ***Nationwide Class.***  All consumers who purchased the Products during the applicable statute of limitations period (the "Class Period") in the United States.

(b)     ***Oregon Subclass***.  All class members who purchased the Products in Oregon.

46.     Specifically excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

47.     Plaintiff reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

48.     ***Numerosity.***  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, the Oregon Subclass comprises at least thousands of consumers throughout Oregon, and the Nationwide Class comprises at least hundreds of thousands of consumers throughout United States.  The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or

publication through the distribution records of Defendant.

49.    ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members of the Class and Subclass.  Common legal and factual questions include, but are not limited to Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products; (b) Whether Defendant's misconduct set forth in this Complaint demonstrates violates the statutes referenced herein; (c) Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public; (d) Whether Plaintiff and the Class and Subclass are entitled to injunctive relief; and (e) Whether Plaintiff and the Class and Subclass are entitled to damages under the same causes of action as the other Class Members.

50.    ***Typicality.***  Plaintiff is a member of the Classes he seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

51.    ***Adequacy***.  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members he seeks to represent; his consumer fraud claims are common to all other members of the Classes and he has a strong interest in vindicating his rights; and he has retained counsel competent and experienced in complex class action litigation and he intends to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Classes.  The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.  Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiff and the Class

Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

52.     ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable.  Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

53.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the proposed Classes as a whole.

54.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of Defendant's wrongdoing.

55.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

<u>**COUNT I**</u>
**Violations of Oregon's Unlawful Trade Practices Act ("UTPA"),**
**ORS §§ 646.605, *et seq*.**
**(*On Behalf Of The Oregon Subclass*)**

56.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

57.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Oregon Subclass against Defendant.

58.     The UTPA, ORS § 646.605 *et seq.*, is Oregon's principal consumer protection

statute.  As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to
> encourage private enforcement of the prescribed standards of trade
> and commerce in aid of the act's public policies as much as to
> provide relief to the injured party.  This is apparent from the
> section itself.  It allows recovery of actual damages or $200,
> whichever is greater, plus punitive damages, costs, and attorney
> fees … The evident purpose is to encourage private actions when
> the financial injury is too small to justify the expense of an
> ordinary lawsuit … the legislature was concerned as much with
> devising sanctions for the prescribed standards of trade and
> commerce as with remedying private losses, and that such losses
> therefore should be viewed broadly.  The private loss indeed may
> be so small that the common law likely would reject it as grounds
> for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984).  A

private plaintiff may also seek an injunction "as may be necessary to ensure cessation of

unlawful trade practices."  ORS 646.636.

59.     Defendant is a "person," as defined by ORS 646.605(4).

60.     Defendant is engaged in "trade" and "commerce" in Oregon by offering for sale

goods with reference prices and discounts that directly or indirectly affect the people of Oregon,

as defined by ORS 646.605(8).

61.     The Products advertised and sold by Defendant with reference prices and

discounts are "goods" that are or may be obtained primarily for personal, family or household

purposes, as defined by ORS 646.605(6).

62.     Plaintiff and the Oregon Subclass purchased the Products advertised by Defendant

with reference prices and discounts for personal, family or household purposes.

Page 16 – COMPLAINT

63.     The unlawful methods, acts and practices pled herein were committed in the course of Defendant's business.  ORS 646.608(1).

64.     Defendant's unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

65.     Defendant's representations of reference prices and discounts on its website are "advertisements" as defined by ORS 646.881(1).

66.     Defendant's use of strikethrough reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

67.     Defendant's list prices are all either (1) representations of Defendant's own "former prices," or (2) representations of Defendant's "future price," as defined by ORS 646.885.

68.     Defendant's methods, acts and practices, including Defendant's misrepresentations, active concealment and failures to disclose, violated and continue to violate the UTPA in ways including, but not limited to, the following:

> (a) Defendant represented its goods had characteristics or qualities that the goods did not have (specifically, Defendant represented that the goods had a value equal to the reference price, when in fact they did not and instead had a much lower true value).  ORS 646.608(1)(e);
>
> (b) Defendant advertised its goods with intent not to provide the goods as advertised (specifically, Defendant represented that the goods had a value equal to the reference price, when in fact they did not and instead had a much lower true value).  ORS 646.608(1)(i);

(c) Defendant made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions.  ORS 646.608(1)(j);

(d) Defendant engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4).  ORS 646.608(ee);

(e) Defendant engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "discount" and/or "sale" and providing strikethrough reference prices where the reference price was not in fact Defendant's own former price, or in the case of introductory advertisements, was not Defendant's future price.  ORS 646.608(ee);

(f) Defendant engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "_____ %  discount," "% Discount Running Now," and/or providing strikethrough reference prices where the reference price was not in fact Defendant's own former price, or in the case of introductory advertisements, was not Defendant's future price.  ORS 646.608(ee); and

(g) Defendant engaged in other unfair or deceptive conduct in trade or commerce, as described herein.  ORS 646.608(1)(u); ORS 646.608(4).

69.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, inter alia:

(a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Oregon Subclass;

(b) Defendant concealed material information from Plaintiff and the Oregon Subclass; and/or

(c) Defendant made partial representations which were false and misleading absent the omitted information.

70.      Defendant's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

71.      Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

72.      Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

73.      As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and Oregon Subclass members suffered ascertainable losses and injury to business or property.

74.      Plaintiff and Oregon Subclass members would not have purchased the products at the prices they paid, if they had known that the advertised reference prices and discounts were false.

75.      Plaintiff and Oregon Subclass members paid more than they otherwise would have paid for the products they purchased from Defendant.

76.      Defendant's false reference pricing scheme fraudulently increased demand from consumers.  This fraud-on-the-market shifted the demand curve and enabled Defendant to charge higher prices than it otherwise could have charged.

77.      The products that Plaintiff and Oregon Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

78.      Plaintiff seeks, on behalf of himself and the Oregon Subclass: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable

relief and/or restitution; and (4) attorneys' fees and costs.  ORS 646.638(3); ORS 646.638(8).

79.     The unlawful acts and omissions pled herein were, are, and continue to be part of a pattern or generalized course of conduct.  Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices.  ORS 646.638(1); ORS 646.638(8)(c); ORS 646.636.

80.     The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff, the Oregon Subclass members and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff, the Oregon Subclass members and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public's interest.  Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint.  If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged herein.  Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

81.     Defendant's conduct has caused substantial injury to the general public.  Plaintiff individually seeks public injunctive relief to protect the general public by putting an end to Defendant's false reference price advertising, false discounts and omissions.

82.     This action was brought "within one year after the discovery of the unlawful method, act or practice." ORS 646.6.

83.     The applicable limitations period is expansive and extends back decades based on the "discovery" rule explicitly provided for in the UTPA at ORS 646.638(6).  Defendant's

unlawful false discounting practices have been pervasive—and at the core of its marketing plan—for as long as RugsUSA has operated its website (the exact length of time will be subject to discovery and proof).

84.     Plaintiff and the Oregon Subclass members did not know, and could not have known, that these reference prices and discount representations were false.  As the Oregon Supreme Court has explained, "In general terms, a cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered." *FDIC v. Smith*, 328 Or. 420, 428, 980 P.2d 141 (1999).  *See also Saenz v. Pittenger*, 78 Or.App. 207, 211–12, 715 P.2d 1126 (1986) (UTPA statute of limitations begins running when plaintiff knows or should have known of the allegedly unlawful conduct).

85.     Plaintiff first learned of Defendant's false advertising scheme, and that he was likely a victim of the scheme, on May 26, 2023.  Prior to that date, Plaintiff was not aware of Defendant's false discount advertising scheme and was not aware that the reference prices and discounts Defendant had previously advertised to him and upon which he had relied in purchasing Plaintiff's Purchased Product were false.

86.     While Plaintiff first learned of Defendant's false advertising scheme on May 26, 2023, almost all of the members of the Class are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme.

87.     By Defendant's design, the false advertising scheme by its very nature is hidden and impossible for the typical consumer to discover.  Consumers who shopped on Defendant's website would have no way to know the true daily price histories and past selling prices for the products they viewed and purchased.  Or that the advertised percentage-off and dollars-off savings were false.  Consumers would have no way to know that Defendant's false discounting

practices extended across all of Defendant's Products. The bottom line is that the members of the Class have not discovered, and could not have reasonably discovered, Defendant's false discounting scheme.

88.    Based on information and belief, almost all of the Class will learn of the scheme for the very first time upon court-ordered class notice in this case.

**COUNT II**
**Fraud**
**(*On Behalf Of The Classes*)**

89.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

90.    Plaintiff brings this claim individually and on behalf of the members of the Class and Oregon Subclass against Defendant.

91.    As discussed above, Defendant misrepresented and failed to disclose material facts about its sales practices, including misrepresenting strikethrough reference prices, misrepresenting "% Discounts" for product, and failing to disclose that its "sale" and "discount" prices were the normal prices at which the Products were typically sold, that its strikethrough prices were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

92.    These misrepresentations and omissions made by Defendant, as described above, upon which Plaintiff and members of the Class and Oregon Subclass reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class and Oregon Subclass to purchase the Products.

93.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class and Oregon Subclass, who are entitled to damages and other legal and equitable relief

as a result.

## COUNT III
### Unjust Enrichment / Restitution
### (*On Behalf Of The Classes*)

94.    Plaintiff and Class Members reallege and incorporate by reference each allegation

set forth above as if fully set forth herein.

95.    Plaintiff brings this claim individually and on behalf of the members of the Class

and Oregon Subclass against Defendant.

96.    "Although there are numerous permutations of the elements of the unjust

enrichment cause of action in the various states, there are few real differences.  In all states, the

focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core

of each state's law are two fundamental elements – the defendant received a benefit from the

plaintiff and it would be inequitable for the defendant to retain that benefit without compensating

the plaintiff.  The focus of the inquiry is the same in each state."  *In re Mercedes-Benz Tele Aid*

*Contract Litig*., 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*,

245 F.R.D. 226, 231 (E.D. Pa. 2007).

97.    Plaintiff and members of the Class and Oregon Subclass conferred a benefit on

Defendant by purchasing the Products and by paying a price premium for them.

98.    Defendant has knowledge of such benefits.

99.    Defendant has been unjustly enriched in retaining the revenues derived from

Class members' purchases of the Products, which retention under these circumstances is unjust

and inequitable because it misrepresents that its Products are on "Sale" at a "% discount" and

includes a strikethrough reference price higher than the purported original price of the Products,

as described above.  These misrepresentations caused injuries to Plaintiff and Class and Subclass

Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

100.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class and Subclass Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass Members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring the Defendant's conduct violates the statutes and common laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes and Subclass on all counts asserted herein;

(d)    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 13, 2023                    Respectfully submitted,

**MARKOWITZ HERBOLD PC**

By:    *s/ Jermaine F. Brown*
         Stanton R. Gallegos, OSB #160091
         StantonGallegos@MarkowitzHerbold.com
         Jermaine F. Brown, OSB #073415
         JermaineBrown@MarkowitzHerbold.com
         *Attorneys for Plaintiff and the*
         *Putative Classes*

**BURSOR & FISHER, P.A.**

Neal J. Deckant *
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455

Stephen A. Beck *
sbeck@bursor.com
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512

Julian Diamond *
jdiamond@bursor.com
Matthew Girardi *
mgirardi@bursor.com
1330 Avenue of the Americas, Floor 32
New York, NY  10019
Telephone:  (646) 837-7150
*\* Pro Hac Vice Application Forthcoming*
*Attorneys for Plaintiff and the Putative Classes*

2019157.1

Page 25 – COMPLAINT